No. 25-50092

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

Arturo Gonzalez,
*Plaintiff-Appellee*,

vs.

El Centro Del Barrio d/b/a CentroMed,
*Defendant-Appellant.*

*On Appeal from the United States District Court for the Western District of Texas, No. 5:24-cv-854, Hon. Orlando L. Garcia*

## BRIEF OF APPELLANT EL CENTRO DEL BARRIO D/B/A CENTROMED

Matthew Sidney Freedus
Rosie Dawn Griffin
**POWERS PYLES SUTTER & VERVILLE, PC**
1250 Connecticut Ave. NW, Eighth Floor
Washington, DC 20036
202.466.6550
matthew.freedus@powerslaw.com
rosie.griffin@powerslaw.com

*Counsel for Defendant-Appellant*

## **CERTIFICATE OF INTERESTED PARTIES**

Appellant certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 has an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1) Plaintiff-Appellee Arturo Gonzalez; Plaintiff-Appellee's attorneys Laura Grace Van Note and Ronald W. Armstrong, II — The Armstrong Firm, PLLC, 109 Yoalana St. Suite 210, Boerne, TX 78006.

2) Defendant-Appellant El Centro Del Barrio d/b/a CentroMed; Defendant-Appellant's attorneys Rosie Dawn Griffin and Matthew Sidney Freedus — Powers Pyles Sutter & Verville, PC, 1250 Connecticut Ave. NW, Eighth Floor, Washington, DC 20036

*s/ Rosie Dawn Griffin*
Rosie Dawn Griffin

*Counsel for Defendant-Appellant*

## SUMMARY REGARDING ORAL ARGUMENT

Defendant-Appellant El Centro Del Barrio, d/b/a CentroMed respectfully requests oral argument, with fifteen minutes allotted to each side. This appeal raises significant issues of statutory interpretation, jurisdiction, judicial review, and federal officer immunity. The issues are of first impression in this Circuit, and the requested argument would aid the Court in its adjudication.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................v

STATEMENT OF JURISDICTION.............................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ...........................2

STATEMENT OF THE CASE....................................................................2

    I.    Legal Framework .........................................................................3

        A.    42 U.S.C. § 233 Immunity and Removal Jurisdiction...............3

        B.    28 U.S.C. § 1442(a)(1) Removal Jurisdiction ..........................6

    II.    Factual Background and Proceedings Below......................................7

STANDARD OF REVIEW .....................................................................12

INTRODUCTION AND SUMMARY OF THE ARGUMENT ...........................13

ARGUMENT ......................................................................................15

    I.    Removal Was Proper Under 42 U.S.C. § 233(*l*)(2) ...........................15

        A.    The Attorney General's Mere Appearance Cannot Preclude Jurisdiction And Judicial Review ...........................................16

            1    The FSHCAA Should be Construed in Favor of a Federal Forum...............................................................................17

            2.    The Well Settled Presumption of Judicial Review Applies to the Attorney General's Coverage Decision ..18

        B.    The District Court's Construction of § 233(*l*) Is Contrary To The Statute's Text ...........................................................21

        C.    The District Court's Decision Undermines The FSHCAA's Purpose .......................................................................28

    II.    CentroMed's Removal Under 28 U.S.C. § 1442(a)(1) Was Timely And Substantively Sound ...............................................................32

        A.    CentroMed Timely Removed Under 28 U.S.C. § 1446(b)(3) ..32

        B.    CentroMed Is Entitled to Remove As A Person Acting Under A Federal Officer And Raising A Colorable Federal Defense.....37

CONCLUSION ...................................................................................42

# TABLE OF AUTHORITIES

## Cases

*Addo v. Globe Life & Acc. Ins. Co.*,
  230 F.3d 759 (5th Cir. 2000) ..............................................................36

*Agyin v. Razmzan*,
  986 F.3d 168 (2d Cir. 2021) .........................................................*passim*

*Allen v. Christenberry*,
  327 F.3d 1290 (11th Cir. 2003) .............................................21, 26, 27

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................................31

*Baris v. Sulpicio Lines, Inc.*,
  932 F.2d 1540 (5th Cir. 1991) .....................................................33, 35

*Blumberger v. Tilley*,
  115 F.4th 1113 (9th Cir. 2024) ....................................................*passim*

*Booker v. Greater Philadelphia Health Action, Inc.*,
  10 F. Supp. 3d 656 (E.D. Pa. 2014) ...................................................31

*Booker v. United States*,
  No. 13-cv-1099, 2015 WL 3884813 (E.D. Pa. June 24, 2015) ..........16

*Bosky v. Kroger Texas, LP*,
  288 F.3d 208 (5th Cir. 2002) .......................................................33, 34

*BP P.L.C. v. Mayor and City Council of Baltimore*,
  593 U.S. 230 (2021)............................................................................2

*Estate of Campbell v. S. Jersey Med. Ctr.*,
  732 F. App'x. 113 (3d Cir. 2018) .........................................................6

*Celestine v. Mount Vernon Nbhd. Hlth. Ctr.*,
  403 F.3d 76 (2d Cir. 2005) ................................................................21

*Chapman v. Powermatic, Inc.*,
  969 F.2d 160 (5th Cir. 1992) ...............................................32, 33, 35

*C. K. v. United States,*
   No. 19-cv-2492, 2020 WL 6684921 (S.D. Cal. Nov. 12, 2020) ...........................4

*Colorado v. Symes,*
   286 U.S. 510 (1932).................................................................6, 14, 38

*De Martinez v. Lamagno,*
   515 U.S. 417 (1995).........................................................13, 14, 17, 19

*Decatur Hosp. Auth. v. Aetna Health, Inc.,*
   854 F.3d 292 (5th Cir. 2017) .........................................................32, 35

*Demers v. Buonanno,*
   2012 WL 5930223 (D.R.I. Nov. 2, 2012)..............................................41

*Doe v. Centerville Clinics Inc.,*
   No. 23-2738, 2024 WL 3666164 (3d Cir. Aug. 6, 2024) .............................26, 28

*Doe v. Nbhd. Healthcare,*
   No. 21-cv-1587, 2022 WL 17663520 (S.D. Cal. Sept. 8, 2022) ........................38

*El Rio Santa Cruz Nbhd. Hlth. Ctr. v. U.S. Dep't of Hlth. & Hum.
   Servs.,*
   396 F.3d 1265 (D.C. Cir. 2005)..............................................26, 27, 29

*Friedenberg v. Lane County,*
   68 F.4th 1113 (9th Cir. 2023) .............................................4, 7, 31, 37

*Gabriel v. Alger,*
   No. 14-cv-03022, 2015 WL 1042507 (D. Colo. Mar. 5, 2015)..........................42

*Glenn v. Tyson Foods, Inc.,*
   40 F.4th 230 (5th Cir. 2022) ...........................................................38

*Guerrero-Lasprilla v. Barr,*
   589 U.S. 221 (2020)..................................................................18, 19

*Hui v. Castaneda,*
   559 U.S. 799 (2010)..............................................................1, 3, 18, 31

*Jefferson County v. Acker,*
   527 U.S. 423 (1999)......................................................................7

*In re Joliet-Will Cnty. Cmty. Action Agency*,
   847 F.2d 430 (7th Cir. 1988) ............................................................. 40

*Krandle v. Refuah Health Ctr., Inc.*,
   No. 22-cv-4977, 2024 WL 1075359 (S.D.N.Y. Mar. 12, 2024) ....... 38

*Latiolais v. Huntington Ingalls, Inc.*,
   951 F.3d 286 (5th Cir. 2020) ............................................................. 17

*Mesa v. California*,
   489 U.S. 121 (1989) ............................................................................. 6

*Mitchell v. Forsyth*,
   472 U.S. 511 (1985) ....................................................................... 1, 31

*Morgan v. Huntington Ingalls, Inc.*,
   879 F.3d 602 (5th Cir. 2018) ........................................................ 33, 36

*Nichols v. Sabzwari*,
   No. 17-cv-01621, 2017 WL 6389634 (D.S.C. Nov. 13, 2017) ..... 41, 42

*Oviedo v. Hallbauer*,
   655 F.3d 419 (5th Cir. 2011) ....................................................... 13, 41

*Par. of Plaquemines v. Chevron USA, Inc.*,
   7 F.4th 362 (5th Cir. 2021) ................................................................ 33

*Rea v. Michaels Stores Inc.*,
   742 F.3d 1234 (9th Cir. 2014) ........................................................... 35

*Rosenblatt v. St. John's Episcopal Hosp.*,
   No. 11-cv-1106, 2012 WL 294518 (E.D.N.Y. 2012) ........................ 42

*S.W.S. Erectors, Inc. v. Infax, Inc.*,
   72 F.3d 489 (5th Cir. 1996) ............................................................... 36

*Sherman v. Sinha*,
   843 F. App'x 870 (9th Cir. 2021) ...................................................... 26

*St. Charles Surgical Hosp., L.L.C. v. Louisiana Hlth. Serv. & Indem. Co.*,
   990 F.3d 447 (5th Cir. 2021) ....................................................... 17, 39

*Watson v. Philip Morris Cos.*,
  551 U.S. 142 (2007)..........................................................6, 14, 38, 39

*Willingham v. Morgan*,
  395 U.S. 402 (1969)...................................................................7, 17

**Federal Statutes**

1 U.S.C. § 1 .............................................................................38

28 U.S.C. § 1291 ........................................................................1

28 U.S.C. § 1332(d) ...................................................................11

28 U.S.C. § 1441 ......................................................................42

28 U.S.C. § 1442 ...................................................................*passim*

28 U.S.C. § 1442(a)(1) .............................................................*passim*

28 U.S.C. § 1446(b) ..........................................................32, 33, 35

28 U.S.C. § 1446(b)(1) .............................................................*passim*

28 U.S.C. § 1446(b)(3) .............................................................*passim*

28 U.S.C. § 1447(d) .....................................................................2

28 U.S.C. § 2679(d)(3) ................................................................16

42 U.S.C. § 233 ....................................................................*passim*

42 U.S.C. § 233(a) .................................................................*passim*

42 U.S.C. § 233(b) .......................................................................9

42 U.S.C. § 233(g) .................................................................*passim*

42 U.S.C. § 233(g)(1)(A)......................................................4, 24, 27

42 U.S.C. § 233(g)(1)(D).....................................................5, 15, 22, 24

42 U.S.C. § 233(g)(1)(E) .......................................................5, 24

42 U.S.C. § 233(g)(4)....................................................................4

42 U.S.C. § 233(h) ........................................................................ *passim*

42 U.S.C. § 233(*l*)(1) ................................................................. *passim*

42 U.S.C. § 233(*l*)(2) ................................................................. *passim*

42 U.S.C. § 254b ...................................................................................7

42 U.S.C. § 254b(a) ...............................................................................7

42 U.S.C. § 254b(k)(3)(G)(iii) ..............................................................7

42 U.S.C. § 254b(k)(3)(C) .....................................................................8

Federally Supported Health Centers Assistance Act of 1995,
    Pub. L. No. 104-73, 109 Stat. 777 (1995) ....................................5, 30

Federally Supported Health Centers Assistance Act,
    Pub L. No. 102-501, 106 Stat. 3268 (1992) ............................4, 28, 30

Pub. L. No. 91-623, 84 Stat. 1870 (1970)...........................................40

Special Health Revenue Sharing Act § 501,
    Pub. L. No. 94-63, 89 Stat. 304 (1975)...........................................3

**Rules**

Fed. R. App. P. 4(a)(1)(B) ....................................................................1

**Regulations**

42 C.F.R. § 51c.110 ..............................................................................8

42 C.F.R. § 51c.303(b)...........................................................................8

45 C.F.R. § 2.1(a)................................................................................41

45 C.F.R. § 2.2(4) ...............................................................................41

**Other Authorities**

Procedure for Removal—Time for Seeking Removal, 14C Fed. Prac.
    & Proc. Juris. § 3731 (Rev. 4th ed.) ................................................35

*Federally Assisted Health Clinics Legal Protection Act of 1991: Hearing on H.R. 2239 Before H. Subcomm. On Administrative Law and Governmental Relations of the Comm. on the Judiciary*, 102d Cong. 17 (July 17, 1991) ....................................................................................................29

H.R. Rep. No. 102-823(I) (1992),
*reprinted in* 1992 U.S.C.C.A.N. 2627 ..........................................................39, 40

H.R. Rep. No. 104-398 (1995),
*reprinted in* 1995 U.S.C.C.A.N. 767 ..............................................15, 18, 28, 29

HHS, Health Resources and Services Administration, Federal Tort Claims Act Search Tool, https://data.hrsa.gov/tools/ftca-search-tool .........................................................................................................................8

HRSA, *Federal Tort Claims Act: Health Center Policy Manual* at 6-7 § B.4, https://bphc.hrsa.gov/sites/default/files/bphc/compliance/ftcahc-policy-manual.pdf.................................................................................................24

S. Rep. No. 94-29 (1975),
*reprinted in* 1975 U.S.C.C.A.N. 469 ....................................................................3

S. Rep. No. 107-83 (2001),
*reprinted in* 2001 U.S.C.C.A.N. 1033 .................................................................4

## STATEMENT OF JURISDICTION

Plaintiff-Appellee Arturo Gonzalez filed a complaint in Texas state court against Defendant-Appellant El Centro del Barrio, d/b/a CentroMed. ROA.30. CentroMed removed this case to the United States District Court for the Western District of Texas pursuant to two federal officer removal statutes: 28 U.S.C. § 1442 and 42 U.S.C. § 233(*l*)(2). The former statute provides a right of removal to any federal officer "or any person acting under that officer" where the action is "for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1); *see Agyin v. Razmzan*, 986 F.3d 168, 174 (2d Cir. 2021). The latter provides a removal right to any "entity or officer, governing board member, employee, or contractor of the entity" who has been deemed to be a Public Health Service employee for purposes of § 233(a) immunity. 42 U.S.C. § 233(*l*)(2); *Blumberger v. Tilley*, 115 F.4th 1113, 1117 (9th Cir. 2024), *cert. denied*, No. 24-1072 (June 23, 2025).

On February 6, 2025, the district court issued its order granting Plaintiff's motion to remand the action to state court. ROA.301–10. On the same day, CentroMed timely noticed this appeal. ROA.311–13; *see* Fed. R. App. P. 4(a)(1)(B). The Court has jurisdiction under 28 U.S.C. § 1291. *See Hui v. Castaneda*, 559 U.S. 799, 804 n.4 (2010) ("[D]istrict court orders denying absolute immunity [under § 233(a)] constitute 'final decisions' for purposes of 28 U.S.C. § 1291.") (citing *Mitchell v. Forsyth*, 472 U.S. 511, 524–27 (1985)). The Court's appellate

jurisdiction extends to all grounds for removal. 28 U.S.C. § 1447(d); *BP P.L.C. v. Mayor and City Council of Baltimore*, 593 U.S. 230, 251 (2021).

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

The issues presented are:

1.      Whether a defendant deemed by the United States Department of Health and Human Services to be a federal Public Health Service employee may remove a case against it to district court pursuant to 42 U.S.C. § 233(*l*)(2) where the United States Attorney General timely appeared in the state court but incorrectly advised that court as to "whether the [HHS] Secretary has determined . . . that such entity . . . is deemed to be an employee of the Public Health Service for purposes of this section with respect to the actions or omissions that are the subject of such civil action or proceeding" as required by 42 U.S.C. § 233(*l*)(1).

2.      Whether, as a separate or alternative basis for removal jurisdiction, a deemed Public Health Service employee is entitled, as a federal officer or person acting under a federal officer, to remove a case against it to district court pursuant to 28 U.S.C. § 1442(a)(1).

## STATEMENT OF THE CASE

This case arises from a federally-designated health center's alleged failure to safeguard its patients' confidential information, and a resulting dispute as to who has the final word on the merits of the health center's statutory immunity defense: the

Attorney General or, when his decision is contested, the federal courts.

## I.    Legal Framework

### A.    42 U.S.C. § 233 Immunity and Removal Jurisdiction

The Emergency Health Personnel Act of 1970, *codified at* 42 U.S.C. § 233(a) *et seq*., immunizes PHS employees from civil actions resulting from "medical, surgical, dental, or related functions" undertaken within the scope of official employment. 42 U.S.C. § 233(a). PHS employees' suit immunity—a freedom from both litigation burden and liability—is ensured by 42 U.S.C. § 233(a), which makes a suit against the United States under the Federal Tort Claims Act ("FTCA") "exclusive of any other civil action or proceeding." *Id*. The "comprehensive" immunity covers "both known and unknown causes of action." *Hui*, 559 U.S. at 806, 810 (holding § 233(a) immunity extends to *Bivens* actions against PHS employees).

In 1975, five years after enacting 42 U.S.C. § 233(a), Congress—via Section 501 of the Special Health Revenue Sharing Act—authorized the appropriation of significant funds to nonprofit, community-based safety-net healthcare providers ("health centers"). Pub. L. No. 94-63, 89 Stat. 304, 342–46 (adding Section 330 to the PHS Act, *codified at* 42 U.S.C. § 254b). The Act reflects Congress's commitment to the "national objective" of providing "high quality health services to all American communities." S. Rep. No. 94-29, at 119 (1975), *reprinted in* 1975 U.S.C.C.A.N. 469, 581. The health center program has enjoyed longstanding bipartisan support

since its inception. *See, e.g.,* S. Rep. No. 107-83 at 2 (2001), *reprinted in* 2001 U.S.C.C.A.N. 1033, 1034 (noting "critical" need "that the committee act to reauthorize and improve programs [including the Health Centers program] that make it possible for millions of Americans to access a health care safety net").

In October 1992, Congress enacted the Federally Supported Health Centers Assistance Act ("FSHCAA"), Pub L. No. 102-501, 106 Stat. 3268 (1992), *codified at* 42 U.S.C. § 233(g) *et seq.*, "which extends to certain entities and their employees that are 'deemed' to be PHS employees . . . the immunity provided in Section 233(a)." *C. K. v. United States*, No. 19-cv-2492, 2020 WL 6684921, at *3 (S.D. Cal. Nov. 12, 2020) (citing 42 U.S.C. § 233(g)(1)(A)). Entities deemed to be PHS employees via the FSHCAA include community health centers receiving federal grant funding under 42 U.S.C. § 254b. 42 U.S.C. § 233(g)(4). "Congress intended for deemed PHS employees to receive protection 'in the same manner' as traditional PHS employees during the coverage period." *Friedenberg v. Lane County*, 68 F.4th 1113, 1127 (9th Cir. 2023) (citing H.R. Rep. No. 104-398, at 4 (1995), and noting "[t]he legislative history is clear on this point"); *Agyin v. Razmzan*, 986 F.3d 168, 177 (2d Cir. 2021) (concluding deemed PHS defendant "received from the federal government a delegation of the same legal immunity that is extended to employees of the Public Health Service").

In December 1995, Congress amended the FSHCAA to make it permanent

and to resolve concerns that arose during the demonstration period. *See* Federally Supported Health Centers Assistance Act of 1995, Pub. L. No. 104-73, 109 Stat. 777 (1995). The amendments established a prospective coverage process under § 233(g)(1)(D)–(E) (requiring health center deeming application), (F) (making agency deeming determinations "final and binding" on the agency, the Attorney General, and other parties in subsequent suits, and prohibiting the agency and the Attorney General from determining "that the provision of services which are the subject of such a determination are not covered under this section").

When a civil action is filed in state court against a deemed PHS defendant, the Attorney General, within fifteen days after being notified of such filing, "shall make an appearance . . . and advise . . . as to whether the Secretary has determined" that the employee is "deemed to be an employee of the Public Health Service . . . with respect to the actions or omissions that are the subject of such civil action or proceeding." *Id.* (*l*)(1). On "such advice," which is "deemed to satisfy" the scope of employment certification under § 233(c) for purposes of removal, the action "shall be removed . . . to the [appropriate] district . . . and the proceeding deemed a tort action brought against the United States." *See id.* § 233(c), (*l*)(1).

"If the Attorney General fails to appear in State court within the time period prescribed[,] . . . upon petition of" any deemed entity or employee, "the civil action or proceeding shall be removed to the appropriate United States district court." *Id.* §

233(*l*)(2). Once removed, the matter is stayed until the district court "conducts a hearing, and makes a determination, as to the appropriate forum or procedure for the assertion of the claim." *Id.* "That is, to decide whether to remand the case for lack of jurisdiction or to substitute the United States as a party and deem the action as one brought under the FTCA" in accordance with the § 233(a). *Estate of Campbell v. S. Jersey Med. Ctr.*, 732 F. App'x. 113, 117 (3d Cir. 2018).

## B.   28 U.S.C. § 1442(a)(1) Removal Jurisdiction

The federal officer removal statute, 28 U.S.C. § 1442(a)(1), affords a removal right to "any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1); *see Mesa v. California*, 489 U.S. 121, 136 (1989) ("1442(a) . . . is a pure jurisdictional statute"—predicated on a colorable federal defense—"seeking to do nothing more than grant district court jurisdiction over cases in which a federal officer is a defendant").

It is well-established that the federal officer removal statute is construed broadly to protect federal interests. *See Colorado v. Symes*, 286 U.S. 510, 517 (1932) ("It scarcely need be said that such measures [allowing for federal officer removal] are to be liberally construed to give full effect to the purposes for which they were enacted."); *accord Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007) (collecting cases and observing "this Court has made clear that the statute must be

'liberally construed'") (citation omitted). Ensuring a right to a federal forum in which to assert immunity is a fundamental purpose of § 1442. *See Willingham v. Morgan*, 395 U.S. 402, 407 (1969) ("[O]ne of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court"); *Jefferson County v. Acker*, 527 U.S. 423, 447 (1999) (Scalia, J., concurring in part and dissenting in part) (observing "the main point" of federal officer removal "is to give officers a federal forum in which to litigate the merits of immunity defenses").

Deemed PHS employees are entitled to invoke 28 U.S.C. § 1442(a)(1) as a basis for removal jurisdiction. *See, e.g., Friedenberg*, 68 F.4th at 1131–32; *Agyin*, 986 F.3d at 171, 182–83.

## II.     Factual Background and Proceedings Below

CentroMed is a Texas nonprofit, community-based health center that receives federal funding under the PHS Act, 42 U.S.C. § 254b *et seq.*, to provide primary health care and related services within a federally-designated medically underserved area in and around San Antonio, Texas. ROA.16; 42 U.S.C. § 254b(a), (k)(3)(G)(iii). To maintain its federal funding, CentroMed must serve all residents of its catchment area, regardless of any individual's insurance status or ability to pay for care. *Id.* § 254b(a)(1). Among a myriad of other "administratively burdensome" requirements "address[ing] all areas of operation," *Agyin*, 986 F.3d at 177, n.5 (citation omitted).

CentroMed must also, by statute and regulation, safeguard its patients' confidential information. *See, e.g.,* 42 U.S.C. § 254b(k)(3)(C) (conditioning health center status on maintenance of "an ongoing quality improvement system that . . . maintains the confidentiality of patient records."); 42 C.F.R. §§ 51c.110 ("All information as to personal facts and circumstances obtained by the project staff about recipients of services shall be held confidential"), 51c.303(b) ("A community health center supported under this subpart must . . . Implement a system for maintaining the confidentiality of patient records in accordance with the requirements of § 51c.110.").

The United States Department of Health and Human Services (HHS) has long deemed CentroMed to be a PHS employee under 42 U.S.C. § 233(g) and (h). *See* HHS, Health Resources and Services Administration, Federal Tort Claims Act Search Tool, https://data.hrsa.gov/tools/ftca-search-tool (evidencing CentroMed's deemed status since calendar year 2010). That status is premised, in part, on CentroMed's continued receipt of § 254b funding. § 233(g)(1), (4) (conditioning deemed status on health center's being a "public or non-profit entity receiving Federal funds under section 254b").

On May 28, 2024, Plaintiff-Appellee, a CentroMed patient, filed his putative class action complaint in Texas's 225th Judicial District Court of Bexar County, alleging harms arising from CentroMed's purported "failure to properly secure and

safeguard [its patients'] protected health information and personally identifiable information stored within Defendant's information network." ROA.30. The complaint "charges [CentroMed] with various legal violations . . . predicated upon the duties set forth in HIPAA," including by failing "to take and implement adequate and reasonable measures to ensure that Representative Plaintiff's and Class Members' Private Information was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use." ROA.34, ¶¶ 14, 15.

On June 28, 2024, two days after being served with the complaint, CentroMed fulfilled its 42 U.S.C. § 233(b) obligation to notify HHS of the suit. ROA.198. A little over a week later, on July 8, 2024, HHS, through paralegal specialist Heather Hill, emailed a letter to CentroMed's General Counsel, Graciela Cigarroa, confirming its receipt of the *Gonzalez* complaint and requesting that CentroMed obtain "at least" a 60-day extension of its state court responsive pleading deadline because "the Agency requires at least 60 days to review the documents in order to determine if the named health center and/or its providers are eligible for FTCA coverage." ROA.109. The United States Attorney's Office for the Western District of Texas also received notice of the complaint, and of CentroMed's request for coverage, on July 8, 2024. ROA.301.

On July 12, 2024, the Attorney General, acting through Assistant United States Attorney (AUSA) Robert D. Green, notified the state court that "[a]t present, HHS has advised only that CentroMed has been 'deemed' to be an 'employee of the Public Health Service.'" ROA.103. Despite recognizing and reporting CentroMed's deemed status as required by § 233(*l*)(1), the United States did not remove the case in accordance with that provision. Instead, the United States asserted that "HHS has not yet provided its report as to whether the deemed status of CentroMed under 42 U.S.C. §§ 233(g) and (h) extends to the acts or omissions that are the subject of this civil action." ROA.103.

In a second notice to the state court, filed stamped July 30, 2024, AUSA Green advised that the "United States . . . has now determined that El Centro del Barrio *was not deemed to be a Public Health Service employee* for purposes of the acts or omissions giving rise to the suit and that this action therefore is not subject to the provisions of 42 U.S.C. § 233." ROA.117 (emphasis added). The notice further asserted that based on CentroMed's purported lack of deemed status, "the United States w[ould] not intervene in this action or move to substitute itself in El Centro del Barrio's stead as the party defendant. *Id.*

CentroMed noticed its removal to the United States District Court for the Western District of Texas on August 2, 2024, citing 42 U.S.C. § 233(*l*)(2) and 28

U.S.C. § 1442(a)(1).[1] ROA.6, 302. On August 30, 2024, Plaintiff moved to remand, arguing the district court lacked jurisdiction because CentroMed: (1) "has no removal right under § 233" and (2) is "not a general officer for purposes of § 1442" and did not timely remove. ROA.138, 141. The United States, identifying itself as a "non-party," likewise urged the district court to remand, arguing AUSA Green's appearance in state court precluded CentroMed's § 233(*l*)(2) removal, and that CentroMed's invocation of § 1442(a)(1) was untimely under § 1446(b)(1). ROA.197 (United States's "Notice . . . Regarding Federal Subject Matter Jurisdiction"). The United States filed a second, "supplemental" brief in the district court on October 18, 2024, again asserting its "appearance alone statutorily precludes removal." ROA.282–83; *see* ROA.284 (arguing United States, by filing a second notice to state court, "definitively closed the door to CentroMed's removal under subsection (*l*)").

The district court granted Plaintiff's remand motion on February 6, 2025. ROA.4, 301–10. In support, the court first concluded—despite CentroMed's lack of reliance on § 233(c) as a removal ground—that CentroMed "could not remove the case under § 233(c) because the United States Attorney did not certify that [CentroMed] was acting within the scope of employment at the time the alleged data breach occurred." ROA.303; *see also* ROA.304 ("Defendant's removal under

---

[1] CentroMed also cited the Class Action Fairness Act, 28 U.S.C. § 1332(d). ROA.302.

§ 233(c) was improper because the United States Attorney neither certified Defendant's PHS employee status under § 233 nor removed the case."). Second, the district court held that CentroMed's reliance on § 233(*l*)(2) as a basis for removal was improper, rejecting CentroMed's arguments that the Attorney General's appearance: (1) failed to satisfy § 233(*l*)(1); and (2) misrepresented CentroMed's deemed status during the period in which the events underlying plaintiff's suit occurred. ROA.304–05. As to § 1442(a)(1), the district court declined to consider whether CentroMed qualified as a person acting under a federal officer, instead concluding removal was untimely under § 1446(b)(1), which the court determined "applies to this case and bars removal." ROA.308; *see* ROA.309 (rejecting application of § 1446(b)(3) to timeliness analysis because "[e]ven if the [U.S.'s] designation notices constitute "other paper". . . Plaintiff did not file the notices or disclose new information that would permit removal.").

On the same day the district court issued its remand order, CentroMed noticed its appeal and concurrently moved to stay the district court's remand order to facilitate meaningful appellate review. ROA.4. Later that day, without explicitly ruling on CentroMed's motion to stay, the district court remanded the case to state court. ROA.4; ROA.332.

## STANDARD OF REVIEW

The district court determined it lacked subject-matter jurisdiction under 42

U.S.C. § 233 and 28 U.S.C. § 1442(a)(1). Issues of subject-matter jurisdiction, including a court's decision to remand for a lack of jurisdiction, are reviewed *de novo*. *See Oviedo v. Hallbauer*, 655 F.3d 419, 422 (5th Cir. 2011) ("The district court's denial of the motion to remand, the propriety of removal under the various governing statutes, and the existence of subject-matter jurisdiction here are all interrelated questions of law subject to de novo review.").

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

This case, in the context of two officer removal statutes, presents a fundamental "who decides" question—that is, who determines whether a deemed federal employee is immune under 42 U.S.C. § 233(a) in any given lawsuit: the Attorney General, unreviewably, or, when that executive branch decision is contested, the appropriate federal court. The district court, with little analysis, rejected both asserted grounds for removal, giving the Attorney General the first and final word on CentroMed's absolute immunity. The decision should be reversed: CentroMed properly removed plaintiff's action under both 42 U.S.C. § 233(*l*)(2) and 28 U.S.C. § 1442(a)(1).

The court's decision conflicts with established principles governing federal officer removals and the "strong presumption that Congress intends judicial review" of executive branch actions impacting individual rights. *Blumberger*, 115 F.4th at 1137–38 (citing *De Martinez v. Lamagno*, 515 U.S. 417, 424 (1995), in turn citing

precedent spanning from 1835 to 1986) (quotation marks omitted). As to the former, it is well settled that measures allowing for federal officer removals "are to be liberally construed to give full effect to the purposes for which they were enacted." *Symes*, 286 U.S. 510, 517 (1932); *accord Watson*, 551 U.S. at 147 (collecting cases and observing "this Court has made clear that the [federal officer removal] statute must be 'liberally construed'") (citation omitted). Regarding the latter, the United States Supreme Court has consistently stated that judicial review of dispositive executive branch actions "will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." *De Martinez*, 515 U.S. at 424–25 (citation omitted). Neither the FSHCAA, nor the broader PHS Act, contain a "clear statutory command" that "could alter fundamentally the answer to the 'who decides' question." *Blumberger*, 115 F.4th at 1137 (citing *De Martinez*, 515 U.S. at 426).

As to § 233(*l*) removal, the decision below is both atextual and purpose defeating. It construes the statute, which requires the Attorney General to perform a simple, ministerial task within fifteen days *to effect removal*, as authorizing the Justice Department to block CentroMed's access to federal court by simply appearing in the state court. *See Blumberger*, 115 F.4th at 1128–29 ("Because [the defendant] was a 'deemed' PHS employee under § 233 when the events giving rise to this action occurred, it ha[d] the right to remove and removal under § 233(*l*)(1) should be automatic upon the Attorney General's appearance."). The FSHCAA's

overarching purpose is to facilitate the delivery of health care and related services in challenging and underserved settings by extending to health centers the absolute immunity afforded to PHS employees. The 1995 provisions—§ 233(g)(1)(D)–(F) and (*l*)(1)–(2)—facilitate access to federal court where a deemed PHS employee's absolute immunity defense can be adjudicated and where, as appropriate, the court can order the United States's substitution. The amendments were designed to encourage health centers to apply for deemed status and to ensure deemed defendants' prompt access to a federal forum in which to assert the immunity the Act confers. *See* H.R. Rep. No. 104-398, at 6, 7.

Finally, in assessing CentroMed's invocation of § 1442(a)(1), the district court applied the wrong standard—§ 144b(b)(1) instead of § 1446(b)(3)—to conclude CentroMed's removal was untimely. Assessed under the correct standard, CentroMed, deemed equivalent to a PHS employee and asserting absolute immunity, acted under a federal officer, raises a colorable federal defense, and otherwise satisfied procedural and substantive criteria for § 1442(a)(1) removal.

This Court should reverse.

## ARGUMENT

## I.    Removal Was Proper Under 42 U.S.C. § 233(*l*)(2)

CentroMed, deemed equivalent to a PHS employee during the period in which Plaintiff's claims arose, properly removed this action to federal court under 42

U.S.C. § 233(*l*)(2). The FSHCAA removal provisions at issue—§ 233(*l*)(1) and (2)—serve an unmistakable purpose: to facilitate access to a federal forum for a threshold determination as to whether plaintiff's exclusive remedy is against the United States. *Blumberger*, 115 F.4th at 1117, 1138–39; *see Booker v. United States*, No. 13-cv-1099, 2015 WL 3884813, at *7 (E.D. Pa. June 24, 2015) (recognizing "removal pursuant to § 233(*l*)(2) serves the same purpose as procedure contemplated by [28 U.S.C.] § 2679(d)(3)"). The district court's failure to recognize its jurisdiction under 42 U.S.C. § 233 ignores settled principles, contravenes statutory text, and undermines legislative purpose.

### A. The Attorney General's Mere Appearance Cannot Preclude Jurisdiction And Judicial Review

"[I]f one thing about § 233 is plain, it is that Congress did not plainly commit [the § 233(a) immunity] inquiry to the unreviewable judgment of the Attorney General." *Blumberger*, 115 F.4th at 1137. The district nonetheless concluded that "[b]y appearing in state court four days after receiving notice of the action from HHS and advising the court that a final determination had not been reached, *the United States Attorney precluded Defendant from removing the case under § 233(l)(2)*." ROA.306 (emphasis added). The decision, which purports to read the statute's "plain text," conflicts with two well-settled principles: first, that statutes providing for federal officer removal are construed broadly in favor of a federal forum; and second, that absent a clear indication to the contrary, courts should proceed from the

strong presumption that Congress intends judicial review of Executive action. *Blumberger*, 115 F.4th at 1138 (citing *De Martinez v. Lamagno*, 515 U.S. 417 (1995)).

### 1.   The FSHCAA Should be Construed in Favor of a Federal Forum

Like other federal officer removal statutes, 42 U.S.C. § 233(*l*)(2) should be broadly construed in favor of a federal forum. *Cf. Willingham*, 395 U.S. at 407 ("Congress has decided that federal officers, and indeed the Federal Government itself, require the protection of a federal forum"); *accord St. Charles Surgical Hosp., L.L.C. v. Louisiana Hlth. Serv. & Indem. Co.*, 990 F.3d 447, 450 (5th Cir. 2021) ("Notably, federal officer removal under 28 U.S.C. § 1442 is unlike other removal doctrines: it is not narrow or limited." (citation omitted)); *see also Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 290 (5th Cir. 2020) (en banc) (courts must assess federal officer removal jurisdiction "without a thumb on the remand side of the scale" (citation omitted)).

A broad construction of § 233(*l*) is consistent with the FSHCAA's language and structure. The Act mandates removal ("shall be removed") on the request of "any" deemed defendant, without any time limit, and thereafter imposes a stay of all proceedings pending a "hearing" and judicial determination as to whether § 233(a) immunity applies to the lawsuit at issue. 42 U.S.C. § 233(*l*)(2). The core requirement for removal—which is also § 233(*l*)'s jurisdictional basis—is the defendant's

deemed federal status for the period in which the events giving rise to the claim occurred. 42 U.S.C. § 233(*l*)(1) (referencing HHS Secretary's deeming determination under "subsections (g) and (h)").

Removal, of course, is a necessary procedural step on the path to immunity, the extension of which was the FSHCAA's primary purpose. H.R. Rep. No. 104-398, at 6, 7. The "comprehensive" immunity the FSHCAA extended to deemed health centers and their personnel is itself stated in "broad" terms. *Hui*, 559 U.S. at 806, 810. The FSHCAA provisions providing that immunity would mean little if that Act's procedural safeguards are construed to provide the Attorney General a foolproof method for locking the door to federal court in every case.[2]

### 2. The Well Settled Presumption of Judicial Review Applies to the Attorney General's Coverage Decision

The district court's decision is inconsistent with the "well-settled" and "strong presumption" that executive determinations are subject to meaningful judicial review. *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229, (2020). Where a statute is "reasonably susceptible to divergent interpretation, [courts] adopt the reading that accords with traditional understandings and basic principles: that executive determinations generally are subject to judicial review and that mechanical

---

[2] A federal forum is necessary to vindicate a deemed defendant's immunity right. *See Blumberger*, 115 F.4th at 1137–38 (rejecting notion "judicial review remains available to [the deemed defendant] in state court or an APA action").

judgments are not the kind federal courts are set up to render." *De Martinez*, 515 U.S. at 428, 434; *accord Blumberger*, 115 F.4th at 1137–38. As the Supreme Court has long recognized, when Congress intends to insulate dispositive executive decisions from judicial review, it does so through a clear statement. *See De Martinez*, 515 U.S. at 424–25, 429; *Guerrero-Lasparilla*, 589 U.S. at 229 (reiterating "presumption can only be overcome by 'clear and convincing evidence' of congressional intent to preclude judicial review"). No guesswork should be required when Congress has committed a decision to the sole discretion of the executive branch. *See Blumberger*, 115 F.4th 1113, 1138 (9th Cir. 2024) ("Congress *is* unequivocal when it intends to override the presumption of judicial review."). Congress did not mince words, for example, in directing that decisions of HHS's Provider Reimbursement Review Board, "shall not be reviewed by the Board *or by any court*." *Id.* (citing 42 U.S.C. § 1395oo(g)(2), among similar examples) (emphasis added).

The district court gave no indication it sought or found a clear statement in § 233(*l*) of Congress's desire to preclude judicial review. The court's interpretation impermissibly "attribute[s] to Congress two highly anomalous commands." *De Martinez*, 515 U.S. at 426. First, that Congress authorized the Attorney General to sit as an unreviewable judge in its own case so long as he appears in state court before the fifteen-day period has elapsed. *Id.* Second, that Congress meant to "cast

Article III judges in the role of petty functionaries, persons required to rubber-stamp the decision" of the Attorney General, "but stripped of capacity to evaluate independently whether that decision is correct." *Id.* The result: under the district court's reading, CentroMed is worse off *because* the Attorney General timely appeared in state court than it would be had the Attorney General simply ignored its request for coverage.

Nothing in the FSHCAA's text even hints that Congress intended to shield the Attorney General's coverage decisions from review, or otherwise afford the Government—a self-interested party—the ability to unilaterally and conclusively decide the question of a deemed defendant's immunity. The Ninth Circuit's thorough analysis in *Blumberger* is instructive. There, construing the statute against "traditional understandings and basic principles," the Ninth Circuit applied the "default rule," concluding Congress, when enacting the FSHCAA, was aware of the Supreme Court's precedents and "understood that federal courts would review the scope of employment determination unless Congress specified otherwise." *Blumberger*, 115 F.4th at 1137, 38. Had Congress wanted to shield the Justice Department's coverage decisions from review, it "would have done so in unambiguous language." *Id.* at 1138. As the Ninth Circuit correctly concluded, Congress did no such thing. *Id.* ("Congress *did* in fact provide for a hearing on scope of employment." (emphasis in original)).

**B.    The District Court's Construction of § 233(*l*) Is Contrary To The Statute's Text**

The district court's decision—which misreads § 233(*l*)(1) as being satisfied when the Attorney General only partially performs what that section commands—cannot be squared with the FSHCAA's text. Even if overall "enormously complicated," the statutory scheme at issue can be understood. *Blumberger*, 115 F.4th at 1117 (observing "resolving hard cases is part of the judicial job description") (citing *Dubin v. United States*, 599 U.S. 110, 132 n.10 (2023)).

Section 233(*l*)(1) obligates the Attorney General to "appear and advise" the state court as to whether the Secretary had issued a "final and binding" deeming determination *pursuant to § 233(g) and (h)* (as confirmed by a Notice of Deeming Action) with respect "to the actions or omissions that are the subject of such civil action or proceeding." 42 U.S.C. § 233(*l*)(1). On such advice, the action must be removed. *Blumberger*, 115 F.4th at 1118, 1126–7 ("[S]ubsection (*l*)(1) requires the Attorney General to provide positive advice to the state court when the employee was deemed for the time period at issue and the lawsuit arises out of a class or category of medical conduct for which the employee was deemed."); *Celestine v. Mount Vernon Nbhd. Health Ctr.*, 403 F.3d 76, 81 (2d Cir. 2005) ("§ 233(*l*)(1) unambiguously states that the Attorney General's appearance before the [state] court shall be deemed to 'satisfy' the provisions of § 233(c)") (emphasis added); *Allen v. Christenberry*, 327 F.3d 1290, 1294 (11th Cir. 2003) (observing if "HHS has

determined that the employee is deemed an employee of PHS . . . the Attorney General must remove the case to federal court").

The "key to unlocking" the meaning of § 233(*l*) is in understanding the distinction Congress drew between the "different determinations made by different department heads." *Blumberger*, 115 F.4th at 1116, 1127–29. Section 233 gives the HHS Secretary, who has "expertise in administering healthcare policies and services," exclusive authority to designate health centers and their personnel to be eligible for § 233(a) immunity. *Id.* at 1128. To carry out that responsibility, the Secretary must "prescribe" an "application," § 233(g)(1)(D), to ensure, among other things, that each health center "has implemented appropriate policies and procedures to reduce the risk of malpractice *and the risk of lawsuits arising out of any health or health related functions* performed by the entity." *Id.* § 233(h)(1) (emphasis added). The Secretary's approval of that application—its ex-ante deeming determination—conveys a federal-employee status during a prospective calendar year that is "final and binding" on the Attorney General in any subsequent litigation arising out of acts and omissions occurring in that year. *Id.* § 233(g)(1)(F). In contrast, the Attorney General, with expertise in representing the interests of the United States and defending the public fisc, is tasked with making a "litigation-specific" coverage decision and, where § 233(a) immunity applies, defending against the merits of FTCA claims. § 233(b), (c); *Blumberger*, 115 F.4th at 1128–29.

22

To provide the binary, yes-no advisement § 233(*l*)(1) demands, the Attorney General "requires access to only two documents—the deeming notice issued by HHS and the complaint." *Blumberger*, 115 F.4th at 1133. From those two documents, he can readily ascertain whether "the defendant has been deemed a PHS employee for the time period in question with respect to the category of [medical, dental, surgical, or related] services identified in the complaint." *Id.* The statute's fifteen-day period provides the Attorney General time to confirm whether the Secretary had deemed the defendant to be a PHS employee with respect to the period in which plaintiff's claims arose. That Congress afforded only fifteen days for this nondiscretionary task reflects its ministerial nature—*i.e.*, reporting the prior "final and binding" determination of the Secretary as to the relevant period—not an ex-post scope of employment certification, which is fact-specific and governed by state law.

The statute neither asks for the Attorney General's certification decision within the "very compressed timeframe" provided, *id.*, nor contemplates a second, ex-post HHS decision separate from the single, ex-ante deeming decision made in accordance with § 233(g). The sole determination § 233(*l*)(1) contemplates is the one it expressly references—*i.e.*, the determination "under subsections (g) and (h)." 42 U.S.C. § 233(*l*)(1). Those subsections speak to the Secretary's prospective, binding deeming determination, afforded in calendar year increments. *See* 42 U.S.C.

§ 233(g)(1)(A), (D), (E). The phrase "actions or omissions that are the subject of such civil action or proceeding" reflects the reality that deemed status—as HHS makes clear—is comparable to an occurrence-based insurance policy, which covers claims arising out of events within a period for which the policy was in place, regardless of when the claim is actually made. *See, e.g.*, HRSA, *Federal Tort Claims Act: Health Center Policy Manual* at 6–7 § B.4, https://bphc.hrsa.gov/sites/default/files/bphc/compliance/ftcahc-policy-manual.pdf ("FTCA malpractice immunity is similar to an occurrence insurance policy. Occurrence coverage is a form of insurance that provides coverage for actions and omissions that take place during the time that the policy is in effect, regardless of when the claim is filed."). Given the Act's clear "division of labor," it makes sense for the Secretary's deeming determination—the only determination referenced in § 233(*l*)(1)—to confer *federal jurisdiction* and obligate the Attorney General to remove the action. *Blumberger*, 115 F.4th at 1128. "[I]t is an employee's deemed status," determined by the Secretary under § 233(g) and (h), "not *covered* status," determined by the Attorney General (or delegee) under § 233(c), "that triggers the removal provisions of § 233(*l*)(1)." *Id*. at 1134 (emphasis added).

Here, the Attorney General's July 12, 2024 "advice" to the state court—that "HHS has not yet provided its report as to whether the deemed status of CentroMed under 42 U.S.C. §§ 233(g) and (h) extends to the acts or omissions that are the

subject of this civil action," ROA.103—reflects the Government's misunderstanding of the "simple up-down certification" § 233(*l*)(1) requires. *Blumberger*, 115 F.4th at 1133. HHS's request that CentroMed ask the state court to extend its responsive pleading deadline for "at least" sixty additional days, ROA.109, underscores that misunderstanding.

The United States's second notice makes the error plain. There, rather than simply report CentroMed's deemed status, the United States provided its coverage determination: that "Plaintiffs' claims, which allege harms resulting from a criminal data breach are neither claims 'for personal injury, including death' within the meaning of 42 U.S.C. § 233(a), nor claims for medical malpractice of the kind that the Federally Supported Health Centers Assistance Act is intended to cover." ROA.117. That coverage decision, as the Ninth Circuit held, is neither called for by the statute nor should have had any legal effect when reported to the state court. *Blumberger*, 115 F.4th at 1134 ("Any advice the Attorney General may give to the state court about its ultimate coverage decision *has no legal consequence,* one way or another, under § 233(*l*)(1).)" (emphasis added). The Attorney General's ex-post coverage determination, in other words, can neither retroactively strip a health center's deemed federal status nor deprive the district court of its jurisdiction over the immunity defense.

In concluding that the Attorney General's timely appearance alone precluded

removal under § 233(*l*), the district court endorses the dissent in *Blumberger*, and relies on decisions the Ninth Circuit either abrogated, distinguished, or pointedly criticized. *Compare* ROA.304, 306, *with e.g., Blumberger*, 115 F.4th at 1128, (*Doe* "illustrates the danger of eliding th[e] distinction" between deeming and coverage determinations).[3] None provide adequate support for the district court's decision or counsel a holding contrary to *Blumberger*.

First, *Allen v. Christenberry* did not hold that § 233(*l*)(1) is satisfied when the Attorney General "timely appeared and advised the state court that a determination as to Defendant's § 233 status had not been finalized." ROA.306; *see Allen*, 327 F.3d at 1294–95. The "decision" in *Allen*—which "had not been made but . . . was forthcoming"—was the ex-ante "HHS determination" under § 233(g) and (h), not the Attorney General's coverage determination under § 233(c). *Cf. Allen*, 327 F.3d at 1294. As the Ninth Circuit noted in *Blumberger*, "Allen involved a unique set of circumstances." 115 F.4th at 1132. When *Allen* was decided, more than twenty years ago, HHS "[did] not maintain any database of individual providers" of deemed health centers, so both deeming and coverage determinations were made after, and

---

[3] *Blumberger* abrogates the Ninth Circuit's earlier, nonprecedential decision in *Sherman v. Sinha*, 843 F. App'x 870 (9th Cir. 2021)); distinguishes *Allen v. Christenberry*, 327 F.3d 1290 (11th Cir. 2003) and *El Rio Santa Cruz Nbhd. Hlth. Ctr. v. U.S. Dep't of Hlth. & Hum. Servs.*, 396 F.3d 1265, 1273 (D.C. Cir. 2005); and criticizes the Third Circuit's unpublished decision in *Doe v. Centerville Clinics Inc.*, No. 23-2738, 2024 WL 3666164 (3d Cir. Aug. 6, 2024).

only in response to, a lawsuit. *El Rio*, 396 F.3d at 1273 (concluding Secretary was violating 42 U.S.C. § 233(g)(1) requirements by not making "advance" deeming determinations); *see Blumberger*, 115 F.4th at 1139 n.10 (noting *El Rio* "says nothing about the availability of the APA to challenge the Attorney General's failure to certify scope of employment once litigation . . . has begun").

Second, the district court's citation to *El Rio Santa Cruz Nbhd. Hlth. Center* likewise fails to support its holding. There, as in *Allen*, the Secretary's obligation to make an initial, ex-ante deeming determination was at issue. *See El Rio*, 396 F.3d at 1271. In *El Rio*, the D.C. Circuit considered whether § 233(*l*)'s removal provisions create a cause of action to challenge the HHS Secretary's decision *not to* prospectively and categorically deem a health center's physicians to be PHS employees under § 233(g)(1)(A). *Id.* The court determined that where a health center or its employee wishes to challenge the Secretary's § 233(g)(1)(A) determination, such a challenge to the agency's action—or inaction—could proceed under the Administrative Procedure Act (APA). *See id.* at 1272–73. *El Rio* did not address the Attorney General's failure to satisfy § 233(*l*)(1) where, as here, the Secretary's "final and binding" decision had been made for the period at issue and documented in a notice of deeming action. *El Rio*, in other words, "says nothing about the availability of the APA to challenge the Attorney General's failure to certify scope of employment once litigation . . . has begun." *Blumberger*, 115 F.4th at 1139.

27

Third and finally, the Third Circuit's nonprecedential decision in *Doe v. Centerville Clinics, Inc.* should not guide this Court. *Cf.* ROA.305–06. *Doe* landed on a reading of § 233(*l*) directly odds with the Ninth Circuit's. *See Doe v. Centerville Clinics Inc.*, No. 23-2738, 2024 WL 3666164 (3d Cir. Aug. 6, 2023), *cert. denied*, No. 24-727 (March 24, 2025). The unpublished (and unpersuasive) decision artificially simplifies a complex statutory scheme, conflating the Secretary's deeming decision with the Attorney General's coverage determination. *Id.* at *2. As the Ninth Circuit pointedly observed, "*Doe v. Centerville Clinics, Inc.* . . . . illustrates the dangers of eliding th[e] distinction" between deeming and coverage determinations." *Blumberger*, 115 F.4th 1128–29.

## C.     The District Court's Decision Undermines The FSHCAA's Purpose

Congress added § 233(*l*) to the PHS Act in 1995 to facilitate deemed defendants' access to a federal forum in which to assert their statutory immunity defense. The obligation § 233(*l*)(1) places on the Attorney General—and the failsafe § 233(*l*)(2) provides deemed defendants in the event the Attorney General refuses or fails to comply—arise from Congress's recognition that the Justice Department's role as envisioned in the 1992 FSHCAA hindered the Act's overarching purpose. H.R. Rep. No. 104-398 at 7. Under the 1992 legislation, removal was contingent on the Attorney General's certification that the health center defendant was acting within the scope of its deemed federal employment. Pub. L. No. 102-501. Health

centers, in other words, enjoyed the benefit of § 233(c)'s removal at "any time before trial," but depended on the Attorney General to remove on their behalf after making a final coverage decision. H.R. Rep. No. 104-398 at 7, 11–12 (noting under 1992 FSHCAA, "the Attorney General is responsible for securing the removal to Federal Court . . . . However current law contains no provision concerning the timeliness of such a response").

During FSHCAA's 1992–1995 pilot phase, the Justice Department frustrated the Act's objectives by, for example, second-guessing decisions of the Secretary and failing to promptly remove state actions to federal court. *See id*. And little surprise, as the Attorney General vigorously opposed the immunity at issue from its inception, (mis)characterizing it as a "radical" expansion of tort liability coverage for health center providers and "the antithesis of sound fiscal management and the responsible delivery of quality medical care." *Federally Assisted Health Clinics Legal Protection Act of 1991: Hearing on H.R. 2239 Before H. Subcomm. On Administrative Law and Governmental Relations of the Comm. on the Judiciary*, 102d Cong. 17 (July 17, 1991) (statement of Stuart M. Gerson, Assistant Attorney General, Civil Division, U.S. Dept. of Justice); *see also El Rio*, 396 F.3d 1265, 1271 (D.C. Cir. 2005) ("Consistent with Congress's concern with the length of time being taken to process malpractice claims . . . the House Report also noted that under then current law, there was a void such that if the Attorney General's response was not

timely, a default judgment could be filed against the covered Center or covered individual.") (citing H.R. Rep. 104–398, at 7, 11–12).

Congress designed the 1995 FSHCAA amendments in part to restrict the authority the 1992 legislation provided the Attorney General. To that end, the 1995 amendments removed the requirement that HHS "consult[] with the Attorney General" prior to conferring deemed PHS employee status, made the Secretary's deeming decision "final and binding" on the Attorney General, required the Attorney General to appear in state court to advise as to the Secretary's determination within fifteen days of notice, and guaranteed prompt access to a federal forum by deeming that appearance and advice to satisfy § 233(c) for purposes of removal. *Compare* FSHCAA of 1992, Pub. L. No. 102-501, *with* FSHCAA of 1995, Pub. L. No. 104-73. The amendments also supplied the removal right at issue here, which not only affords an automatic and immediate stay of proceedings (to prevent erosion of the federal employee's immunity) but also imposes an obligation on the federal court to "conduct a hearing" to make the threshold immunity determination. Pub. L. No. 102-501.

By requiring the Attorney General to promptly report the defendant's federal status (before the typical deadline for a responsive pleading), and mandating removal on the defendant's petition should the Attorney General fail to do so, the FSHCAA's paired removal provisions protect deemed health centers and their personnel against

default judgment and litigation burden. The district court's interpretation leaves CentroMed subject to both dangers. The former was a risk—though not the only risk—Congress clearly sought to guard against in enacting the 1995 FSHCAA. *See id.*; *see also Booker v. Greater Philadelphia Health Action, Inc.*, 10 F. Supp. 3d 656, 666 (E.D. Pa. 2014) ("Congress sought to expand § 233's existing removal procedure to permit health centers and their employees to protect themselves against the risk of a default judgment. . . ."). The latter is antithetical to the absolute immunity Congress permanently extended, via that legislation, to health centers and their personnel. *See Hui v. Castaneda*, 559 U.S. 799, 806 (2010) ("Section 233(a) grants absolute immunity to PHS officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct."); *Agyin*, 986 F.3d at 177 ("[Deemed PHS employee] received from the federal government a delegation of the same legal immunity . . . extended to employees of the Public Health Service"); *Friedenberg*, 68 F.4th at 1126. Such immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *see Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009) (official immunity is the right to be free from "the concerns of litigation, including 'avoidance of disruptive discovery'") (citation omitted).

## II.    CentroMed's Removal Under 28 U.S.C. § 1442(a)(1) Was Timely And Substantively Sound

CentroMed properly invoked 28 U.S.C. § 1442(a)(1) as a separate and alternative basis for removal jurisdiction. The district court assessed the timeliness of CentroMed's federal officer removal under the wrong standard—section 1446(b)(1)—and thus did not evaluate CentroMed's entitlement to remove as a person acting under a federal officer within the meaning of 28 U.S.C. § 1442(a)(1). Analyzed under the proper standard, CentroMed's federal officer removal was both timely and substantively sound. The district court's contrary conclusion was in error.

### A.    CentroMed Timely Removed Under 28 U.S.C. § 1446(b)(3)

CentroMed's removal was timely under 28 U.S.C. § 1446(b). Read "as a whole, § 1446(b) provides a two-step test for determining whether a defendant timely removed a case." *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 161 (5th Cir. 1992); *accord Decatur Hosp. Auth. v. Aetna Health, Inc.*, 854 F.3d 292, 297 (5th Cir. 2017). First, if removability is apparent on the face of the initial pleading, § 1446(b)(1) imposes a thirty-day limit on removal that begins to run from service of that pleading. § 1446(b)(1). Second, and alternatively, where "the case stated by the initial pleading is not removable" the thirty-day removal clock in § 1446(b)(3) applies, and starts to run only "after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is . . . removable." 28 U.S.C.

§ 1446(b)(3); *see Par. of Plaquemines v. Chevron USA, Inc.*, 7 F.4th 362, 368 (5th Cir. 2021) ("[T]he removal clock runs from 'the initial pleading only when that pleading affirmatively reveals on its face' the grounds for removal.") (quoting *Chapman*, 969 F.2d at 163; *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 210 (5th Cir. 2002).

The § 1446(b)(3) clock begins where federal jurisdiction is "unequivocally clear and certain" on the face of an "amended pleading, motion, order, or other paper." *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 211 (5th Cir. 2002) (construing "ascertained" to mean "unequivocally clear and certain"); *accord Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 609 (5th Cir. 2018) ("'ascertain' requires a high level of certainty"). Both of § 1446(b)'s deadlines are non-jurisdictional and may be waived. *See Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1544 (5th Cir. 1991) ("[A]n irregularity in removal is waivable and, if waived, a federal court has power to proceed with a removed case that is within its original jurisdiction.").

The district court perplexingly concluded that CentroMed's § 1442(a)(1) removal was at once both overdue and premature under § 1446(b). First, the court held that CentroMed removed seven days after the expiration of the thirty-day period imposed by § 1446(b)(1); second, the court concluded, in dicta, that CentroMed's "removal under § 1446(b)(3) would also be improper because the case's removability did not change" between when the complaint was filed and when

CentroMed removed, and because "Plaintiff did not file the [United States's state court] notices or disclose new information that would permit removal." ROA.308–09. Each conclusion is erroneous.

First, the district court misperceived CentroMed's removal as tardy by proceeding under the wrong standard. Applying subsection (b)(1) rather than (b)(3), the court held that CentroMed's removal was procedurally flawed because it occurred thirty-seven days after service of the complaint. ROA.308; ROA.309 (holding "§ 1446(b)(1) applies to this case and bars removal"). But the Court itself found the complaint "does not contain any federal claims that would justify removal." ROA.308. Accordingly, the complaint did not trigger the removal clock, and the district court's conclusion that CentroMed's § 1442(a)(1) removal was untimely under § 1446(b)(1) was in error. *See Bosky*, 288 F.3d at 209–10.

Despite having held that "§ 1446(b)(1) applies to this case and bars removal," the district court further concluded that CentroMed's "removal under § 1446(b)(3) would also be improper" as, apparently, premature. ROA.308. The conclusion is based on the district court's misguided interpretation of § 1446(b)(3) as barring removal absent a triggering event. ROA.308–09 (citing "Defendant's unaltered status as a PHS employee" as precluding removal because "Plaintiff did not . . . disclose new information that would permit removal").

Section 1446(b)(3) sets a procedural limit on removal, not a substantive

prerequisite. *Chapman*, 969 F.2d at 161; *accord Decatur Hosp. Auth. v. Aetna Health, Inc.*, 854 F.3d 292, 297 (5th Cir. 2017); *see Blumberger*, 115 F.4th at 1121 ("Section 1446(b) provides the rules governing the timeliness of removal."). Nothing in § 1446(b)(3) so much as hints that it should operate to allow plaintiffs to bar removals by withholding the "other paper" that triggers a defendant's removal obligation. *See* Procedure for Removal—Time for Seeking Removal, 14C Fed. Prac. & Proc. Juris. § 3731 (Rev. 4th ed.) (noting provision codifies previous judicial holdings that period for filing removal notice will be extended or renewed when a case that at first did not seem removable later becomes or is discovered to be removable); *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014) ("[A]s long as the complaint or 'an amended pleading, motion, order or other paper' does not reveal that the case is removable, the 30–day time period never starts to run and the defendant may remove at any time."); *accord Blumberger*, 115 F.4th at 1123. The question of timeliness—whether and when the § 1446(b)(3) clock began ticking—is entirely distinct from whether the federal court has subject matter jurisdiction over an action. *See Baris*, 932 F.2d at 1543–44 (5th Cir. 1991).

Here, no "other paper" indicating CentroMed's deemed federal status appeared in the record until July 12, 2024, when the United States confirmed that status, at least in part, by advising the state court:

> At present, HHS has advised only that CentroMed has been 'deemed' to be an "employee of the Public Health Service." HHS has not yet provided its report

as to whether the deemed status of CentroMed under 42 U.S.C. §§ 233(g) and (h) extends to the acts or omissions that are the subject of this civil action.

ROA.103. While the notice's first sentence would seem to indicate that the case was removable, its second sentence casts significant doubt. The Ninth Circuit, considering a similar notice—indicating a deemed PHS employee's "deemed status 'with respect to the actions or omissions that are the subject of the . . . action[] is under consideration'"—concluded the "definitionally indeterminate" notice did not start § 1446(b)(3)'s clock. *Blumberger*, 115 F.4th at 1123. Taken as a whole, the United States's July 12, 2024 notice, like that considered in *Blumberger*, falls far short of providing "clear and unequivocal" support sufficient to start § 1446(b)(3)'s thirty-day clock.

Moreover, even if CentroMed was well aware that its deemed PHS employee status could supply removal jurisdiction, a defendant's subjective knowledge of facts supporting removability, standing alone, does not trigger the obligation to remove. *See S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996) ("[D]efendant's subjective knowledge cannot convert a case into a removable action."). Instead, the "other paper" capable of starting the § 1446(b)(3) removal clock must be a written document and must "result from the voluntary act of a plaintiff which gives the defendant notice of the changed circumstances which now support federal jurisdiction." *Addo v. Globe Life & Acc. Ins. Co.*, 230 F.3d 759, 762 (5th Cir. 2000); *Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 611 (5th Cir.

Case: 25-50092    Document: 25    Page: 47    Date Filed: 06/23/2025

2018) (holding § 1446(b)(3) removal clock begins on receipt of deposition transcript, not when testimony was given).

Finally, even if the Government's ambiguous July 12, 2024 notice could be construed to have triggered § 1446(b)(3)'s thirty-day clock, CentroMed removed on August 2, 2024, twenty-one days after the notice was filed, *i.e.*, within the period provided. ROA.6, 112.

### B.    CentroMed Is Entitled to Remove As A Person Acting Under A Federal Officer And Raising A Colorable Federal Defense

Although the district court declined to reach the issue, CentroMed, a federally-funded health center operating in accordance with 42 U.S.C. § 254b and deemed to be a PHS employee for purposes of official immunity, was "acting under" a federal officer for purposes of § 1442(a)(1) removal, raised a colorable federal defense in asserting § 233(a) immunity, and otherwise met statutory criteria for removal. *See Blumberger*, 115 F.4th at 1123 (concluding HHS deeming notice "provides unequivocally clear and certain support for [defendant]'s contention that he was acting 'pursuant to a federal officer's directions' when treating [plaintiff] and that there is a 'colorable federal defense' pertaining to the medical malpractice claims."); *Friedenberg*, 68 F.4th at 1131–32; *Agyin*, 986 F.3d at 171, 185. Defendants invoking the federal officer removal statute must show: (1) they are a person within the meaning of the statute; (2) they acted pursuant to a federal officer's directions; (3) they assert a colorable federal defense; and (4) there is a relation between the

defendant's acts under color of federal office and the plaintiff's claims. *Glenn v. Tyson Foods, Inc.*, 40 F.4th 230, 234 (5th Cir. 2022). "Both § 1442 and especially its 'acting under' provision must be read broadly." *Agyin*, 986 F.3d at 175; *see Symes*, 286 U.S. at 517; *accord Watson*, 551 U.S. at 147.

CentroMed is a "person" under the statute, 1 U.S.C. § 1, and, in asserting § 233(a) immunity, has raised a colorable federal defense. *See Blumberger*, 115 F.4th at 1123 (concluding deemed defendant raised a 'colorable federal defense' in asserting § 233(a) immunity); *Agyin*, 986 F.3d at 174 (concluding defendant's § 233(a) immunity "defense alone suffices for removal under § 1442"). CentroMed's alleged acts and omissions—in protecting and maintaining the confidentiality of its patients' information—likewise easily meet the requirement that they be "connected with" CentroMed's fulfillment of its federal health center project. *See, e.g., Krandle v. Refuah Health Ctr., Inc.*, No. 22-cv-4977, 2024 WL 1075359, at *9 (S.D.N.Y. Mar. 12, 2024) (applying immunity to suit premised on alleged harms arising from data breach); *Doe v. Nbhd. Healthcare*, No. 21-cv-1587, 2022 WL 17663520, at *8 (S.D. Cal. Sept. 8, 2022) (same).

The key inquiry is thus whether CentroMed acted under a federal officer. A private entity qualifies as a person acting under a federal officer when it acts on behalf of the federal officer under delegated authority, or by "assist[ing]" or "help[ing] carry out" the official "duties or tasks of the federal superior." *Watson*,

551 U.S. at 152 (emphasis omitted). In the Fifth Circuit, "to satisfy the 'acting under' requirement, a removing defendant need not show that its alleged conduct was precisely dictated by a federal officer's directive." *St. Charles Surgical Hosp., L.L.C. v. Louisiana Health Serv. & Indem. Co.*, 990 F.3d 447, 454 (5th Cir. 2021). The relationship between the removing party and the federal government is the focus, and courts are tasked with determining whether that relationship is marked by a "sufficient level of subjection, guidance, or control over the private actor." *Id.*

The Second Circuit, in *Agyin*, concluded that a deemed PHS physician acted under a federal officer in part because the physician's federally-supported health center employer was "subject to detailed requirements and oversight by the federal government" that—more than mere regulation—amount to "direct and detailed control of a federal agency or officer." *Agyin*, 986 F.3d at 177 (identifying indicia of such control, including through periodic "operational site visits . . . to verify compliance with the Health Center Program."). The same "administratively burdensome" "Federal requirements" applicable in *Agyin* apply to CentroMed, and "address all areas of [CentroMed's] operation." H.R. Rep. No. 102-823(I), 5 (1992), *reprinted in* 1992 U.S.C.C.A.N. 2627; *accord Agyin*, 986 F.3d at 176, 178.

Congress's grant of deemed federal employee status to health centers—and its delegation to health centers of the same legal immunity extended to actual PHS employees—evinces its recognition that health centers not only work under a high

degree of HHS control in their daily operations, but also assist the government in doing a job it would otherwise perform itself: providing medical care to the indigent. *See Agyin*, 986 F.3d at 176–78; *see also In re Joliet-Will Cnty. Cmty. Action Agency*, 847 F.2d 430, 432 (7th Cir. 1988) ("nature of the grantor-grantee relationship is such as to constitute the grantee in effect an agent to carry out specified tasks"). Indeed, the federal government used to fulfill the role CentroMed now serves, in part through the National Health Service Corps ("NHSC"), members of which Congress authorized the HHS Secretary to "assign . . . to provide . . . health care and services for persons residing in [areas designated by the Secretary as having a critical health manpower shortage]." *See* Pub. L. No. 91-623, 84 Stat. 1870–71, § 2(a), (b) (1970) (tasking NHSC "to improve the delivery of health services to persons living in communities or areas of the United States where health personnel and services are inadequate to meet the health needs of the residents of such communities and areas."). When considering the FSHCAA, Congress noted that, historically, more than one-half of health center staff were NHSC members. H.R. Rep. No. 102-823(I), 5.[4]

Consistent with this history and HHS's continued involvement in, and control

---

[4] The FSHCAA was enacted in part to address increased costs incurred during the nine-year period in which "the NHSC-assigned physicians [at health centers] lost their FTCA coverage, thus making malpractice costs a larger problem for the centers." *Id.*

of, health center operations, HHS defines health center personnel as federal employees in other contexts, including in regulations governing *HHS employee* testimony and production of documents in proceedings in which the United States is not a party. *See., e.g.,* 45 C.F.R. §§ 2.1(a), 2.2(4) (defining "Employee of the Department" to include "Employees and qualified contractors of an entity covered under the [FSHCAA]" with respect to information acquired during the "performance of medical, surgical, dental or related functions."). The regulation characterizes deemed PHS employee functions as duties undertaken in an "official capacity with DHHS." *Id.* Recognizing that deemed PHS employees perform "official duties" and that testifying would "not promote DHHS's objectives," the Department of Justice has removed a state court action pursuant to § 1442(a)(1) and moved to quash a subpoena for a health center employee's deposition testimony." *Demers v. Buonanno*, 2012 WL 5930223, at *2 (D.R.I. Nov. 2, 2012), *report and recommendation adopted*, 2012 WL 5940568 (D.R.I Nov. 27, 2012).

No surprise, against this backdrop, that the United States has for decades invoked § 1442(a)(1) as a basis for removal on behalf of deemed PHS defendants sued in state courts for their performance of medical or related functions. *See, e.g., Oviedo v. Hallbauer*, 655 F.3d 419, 422 (5th Cir. 2011) ("The United States asserts that removal and federal jurisdiction were proper under an array of statutes—28 U.S.C. § 1442(a), governing suits against federal officers. . . ."); *Nichols v. Sabzwari*,

No. 17-cv-01621, 2017 WL 6389634, at *1 (D.S.C. Nov. 13, 2017) (noting U.S.'s §

1442(a)(1) removal and representation that dentist employed at grant-supported

health center was "agent or employee of the USA"), *report and recommendation*

*adopted*, No. 17-cv-01621, 2017 WL 6367453 (D.S.C. Dec. 11, 2017); *see also, e.g.,*

*Gabriel v. Alger*, No. 14-cv-03022, 2015 WL 1042507 at *1 (D. Colo. Mar. 5, 2015)

(removing case brought against deemed PHS employee under 28 U.S.C. §§ 1441

and 1442); *Rosenblatt v. St. John's Episcopal Hosp.*, No. 11-cv-1106, 2012 WL

294518 at *1 (E.D.N.Y. 2012) (removing under §§ 1441(a), 1442(a)(1), and

2679(d)(2)).

Simply put, CentroMed was entitled to invoked § 1442(a)(1) as a basis for

removal—in addition to § 233(*l*)(2)—and timely did so here.

## CONCLUSION

For the foregoing reasons, this Court should reverse the decision below and

remand this matter with instructions to adjudicate CentroMed's immunity defense.

June 23, 2025                          Respectfully submitted,

                                      *s/ Rosie Dawn Griffin*
                                      Matthew Sidney Freedus
                                      Rosie Dawn Griffin
                                      Powers Pyles Sutter & Verville, PC
                                      1250 Connecticut Ave. NW, Eighth Fl.
                                      Washington, DC 20036
                                      202.466.5660
                                      matthew.freedus@powerslaw.com
                                      rosie.griffin@powerslaw.com
                                      *Counsel for Defendant-Appellant*

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(A)(7)(B) because it contains 10,063 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f)

2.      This brief also complies with the type and typeface requirements of Fed. R. App. P. 32(A)(5) and Fed. R. App. P. 32(A)(6) because it prepared in a proportionally spaced typeface using Microsoft Office 365 with a 14 point font named Times New Roman.

*s/ Rosie Dawn Griffin*
Rosie Dawn Griffin

*Counsel for Defendant-Appellant*

June 23, 2025